## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN, a Division of the Rail Conference of the International Brotherhood of Teamsters, | ) ) ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Case No. 08-CV-0828-MJR |
| UNION PACIFIC RAILROAD COMPANY, | ) ) ) | |
| Respondent. | ) | |

## ORDER

**REAGAN, District Judge:**

On August 19, 2008, the National Railroad Adjustment Board (NRAB) issued an arbitration award in favor of Petitioner Brotherhood of Locomotive Engineers and Trainmen (BLET) and against Respondent Union Pacific Railroad Co. The award reinstated W.L. Narron, a locomotive engineer that BLET represented, to his employment with Union Pacific and awarded back pay. BLET was not completely happy with the award because the award also allowed Union Pacific to offset Narron's back pay by any of Narron's outside earnings. BLET filed a petition for review of the award in this Court under § 3 of the Railway Labor Act, 45 U.S.C. § 153 (2006), and the parties have moved for summary judgment (Docs. 18, 19). Unfortunately, once the Court heard oral argument on the motions, the Court realized that it cannot review the reward or decide the motions for summary judgment without crucial pieces of information that are missing in the record of the NRAB's decision. Because of this, the Court will vacate the outside-earnings offset in the award and remand the case for further proceedings.

The facts of the case are not in dispute. Prior to the incidents in this case, Narron had 32 years of service with Union Pacific with a clean disciplinary record, but he was suspended without

pay on July 30, 2002. Two days later, on August 1, he received notice of an investigative meeting that would take place on August 7 to determine if he was "insubordinate, discourteous, and quarrelsome" with a yard operations supervisor on July 30. The investigation was postponed several times until September 25, 2003. At the hearing, Union Pacific terminated Narron's employment.

Narron, through the BLET, appealed the decision internally to Union Pacific's labor relations director, who denied the appeal on January 28, 2004. A day shy of one year later, the Brotherhood submitted the dispute to the NRAB, requesting reinstatement, full back pay, fringe benefits, vacation, and seniority rights lost. On August 19, 2008, NRAB's first division found in Narron's favor. It found that the decision to terminate was not based on substantial evidence. It did not give Narron's full requested remedy, though. He was reinstated with benefits and seniority, but his right to back pay was restricted in the following manner. The parties were directed to determine if he should receive back pay from August 7, 2002 to September 25, 2003, because those postponements were at Narron's request or at the request of the Brotherhood due to medical reasons that allegedly were the result of the disciplinary incident. Union Pacific was also allowed to offset from its obligation of back pay any outside earnings that Narron received while removed from duty. The division cited prior decisions of the division, holding that back pay was a remedy to make the aggrieved employee whole, not provide the employee with a windfall.

The division omitted something that is important for the Court's review of this offset provision. It did not determine if Narron actually had any outside earnings that would be offset. The proceedings below contained none of that information, and the parties briefs lacked the information as well. The Court brought up the issue of the lack of any findings or evidence of outside earnings at oral argument. Union Pacific replied, "I don't know that, as I stand here, that Mr. Narron has outside earnings." (Doc. 33 at 20.) Union Pacific then explained that the award issued by the NRAB is "qualitative as opposed to quantitative" in that it describes the remedy and then the parties get

together and do the math. (*Id.*) The Court asked the Brotherhood the same question, who indicated the same course of action. (*Id.* at 26–28.) Evidently, not only had the math not yet been computed, the Brotherhood also did not know if Narron, the individual they represented, had any outside earnings at all.

This issue is important for the Court because it is unknown how an award mandating an outside-earnings offset would affect Narron. If Narron did have outside earnings during the period that his termination was under review, then the dispute between him and Union Pacific would still be viable. If he did not, then any review that the Court would do would be purely academic. The dispute would be moot. There would be no case or controversy to adjudicate, which is constitutionally necessary for the Court's subject-matter jurisdiction. U.S. Const. art. III, § 2. This difficulty can be cured by remanding the case back to the NRAB to fill out the record with the missing information. *See* Railway Labor Act § 3 First (q), 45 U.S.C. § 153 First (q) (noting that on a petition to review an order of a division of the NRAB, a court may "affirm the order of the division, or to set it aside, in whole or in part, or it may remand the proceedings to the division for such further action as it may direct").

Accordingly, the Court **VACATES** the portion of the NRAB's award allowing for an outside-earnings offset, **REMANDS** the case to the NRAB and **DIRECTS** the NRAB to determine the outside earnings of Narron, if any. Because the procedural posture of the case requires a remand, all pending motions (Docs. 18, 19) are **MOOT**.

**IT IS SO ORDERED.**

**DATED September 3, 2010.**

s/ Michael J. Reagan
**MICHAEL J. REAGAN**
**United States District Judge**

3